IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Gary L. Schaefer (Y24505), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16 C 50377 |
| v. ) | |
| ) | Magistrate Judge Iain D. Johnston |
| C/O Spates, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

It is the Court's Report and Recommendation that Defendant's request for dismissal of the complaint be granted and that Plaintiff's claims be dismissed without prejudice for failure to exhaust administrative remedies. Any objection to this Report and Recommendation must be filed by April 2, 2018. Failure to object may constitute a waiver of objection on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

## BACKGROUND

Plaintiff Gary L. Schaefer, an Illinois prisoner, initiated this action under 42 U.S.C. § 1983 concerning events that occurred at the Winnebago County Jail. He initially brought his claims against the Winnebago County Sheriff's Department, Superintendent Redmond, and three correctional officers alleging "I feel unsafe in this jail and don't think the officer was or is doing his job correctly. I am in fear for my life being in Winnebago County Jail[.]" Dkt. 1 at 5. He went on to explain that he had been attacked without warning by inmate Jacob Paul Vereecken and sustained a broken jaw and damage to his teeth as a result of the attack. *Id.* He concluded by stating the following: "I feel that the jail was not doing their job the day my jaw was broken and lets a lot of stuff slide daily." *Id.* at 6 (cleaned up). The Court dismissed the complaint for

failure to state a claim, explaining that the mere fact Plaintiff was attacked by another inmate was insufficient to establish a constitutional violation and also explaining that the only allegations against Defendant Spates—which concerned Spates' response to the attack—showed no misconduct. Dkt. 4, Jan. 13, 2017 screening order.

Plaintiff subsequently submitted an amended complaint alleging that on October 19, 2016, he was attacked after he refused to give inmate Vereecken his lunch tray. Dkt. 5 at p. 4. The events precipitating the attack began earlier that day when Vereecken "threatened" Plaintiff and demanded Plaintiff's breakfast. *Id.* Instead of giving Vereecken the meal, Plaintiff quickly ate his breakfast and told Defendant Spates about the incident. *Id.* Spates told Plaintiff "not to worry he would take care of it." *Id.* At lunch, Vereecken again demanded Plaintiff's meal and Plaintiff again refused to give it to him. *Id.* at 4-5. Vereecken then followed Plaintiff back to his cell and punched Plaintiff in the face hard enough to knock his "teeth . . . out of place." *Id.* at 5. Plaintiff pushed the emergency button, Officer Spates arrived, and the two walked to the medical unit. *Id.* According to Plaintiff, "Spates did not protect me!" *Id.* Given the liberal construction due *pro se* pleadings, the Court allowed a failure-to-protect claim to proceed against Spates, but dismissed all other claims and defendants. Dkt. 6, Mar. 7, 2017 screening order.

Defendant Spates answered Plaintiff's amended complaint and asserted, as an affirmative defense, that Plaintiff failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e. Dkt. 11. On January 31, 2018, the Court held a *Pavey* hearing on the exhaustion issue. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *see also Wagoner v. Lemmon*, 778 F.3d 586, 591-92 (7th Cir. 2015) (finding that courts should hold a *Pavey* hearing before deciding the action on the merits).

Justin Egler, who works at the Winnebago County Jail, testified at the hearing that he was an Administrative Lieutenant at the jail during the time period at issue in this litigation. He was responsible for the classification process, the disciplinary process, and commissary. He also was familiar with the jail's grievance procedures.

Egler explained that inmates were made aware of the grievance process through an orientation video that ran multiple times a day in all the pods in booking. Grievance procedures also were set out in the inmate handbook, which was given to inmates during the classification interview. The handbook provides the following, in pertinent part:

> An inmate grievance procedure is made available to all inmates and includes at least one level of appeal . . . . Grievances must be submitted using the inmate kiosk Cobra GT. Corrections Officer will provide assistance if needed. Detainees must enter grievance with a thorough explanation of the problem. Inmates will receive a response via Cobra GT within seven (7) business days of filing the grievance. Inmates may appeal the grievance decision by submitting an appeal via Cobra GT to the Jail Superintendent. The decision of the Jail Superintendent or their designee is final.

*See* Dkt. 35, pg. 10 (Def.'s Ex. 1, Winnebago County Sheriff's Corrections Bureau, Inmate Handbook, Grievance Procedures). Inmate kiosks were located in every pod.

While referring to photographs of the computer screens inmates encounter at the kiosks, *see* Dkt. 35-1, pg. 2-15 (Def.'s Exs. 2-15, kiosk screen shots), Egler explained that an inmate starts the grievance process by choosing his preferred language—he could select from several—and then logging in with his inmate identification number and fingerprint. A touch screen then appears with four choices: facility information, view balances and history, order commissary, or GT. GT stands for Grievance Tracker and allows the inmate to see his pending requests and grievances, review his closed requests and grievances, and submit a new request or grievance.

To submit a new grievance, an inmate selects "GT" and then "create a request." The next screens provide options such as commissary account questions, discipline/appeals, general

3

requests, grievance-general, grievance-food service, medical grievance, or medical requests. The inmate must select one of the options, and then a screen with a keypad and a dialog box appears. If the inmate chooses "grievance-general," a prompt appears above the dialog box: "enter your request for – GRIEVANCE – GENERAL[.]" *See* Dkt. 35-1, pg. 13. The inmate can then type in his complaint. When he is finished, he must touch "submit message" at the right-hand side of the screen to submit the grievance. Inmates receive responses to their requests and grievances via the kiosks. The process for appealing a grievance response is similar to the process for submitting a grievance, except that the inmate would chose "discipline/appeals" before typing his complaint into the dialog box.

Egler also authenticated a 58-page "Resident Request Report" showing Plaintiff's entries into the kiosks. *See* Dkt. 35-1, pg. 16 through Dkt. 35-2, pg. 37 (Def.'s Ex. C, Resident Request Report for Gary Lee Schaefer). Egler testified that all entries made into the COBRA GT kiosks are automatically saved on the jail's computer system. The entries are never deleted. The Report shows that Plaintiff made 311 entries on the COBRA GT kiosk system from July 5, 2016 to May 17, 2017. (That is almost one grievance per day.) The Report also shows that Plaintiff submitted requests under the categories of tender request, general request, medical request, phone issue request, library request, grievance – general, haircut/shave request, medical grievance, grievance – food services, programming request, meals/kitchen request, "bivens act request," visit request, and discipline/appeals.

Defendant argued at the hearing that none of the requests submitted by Plaintiff constitute a grievance about the issues raised in this lawsuit, *i.e.*, that Officer Spates was aware of a significant risk of harm to Plaintiff and failed to protect Plaintiff from that harm. To that end, Defendant identified five entries that, he says, "even tangentially can be said to have been a

4

grievance" relating to the events that form the basis of Plaintiff's complaint. The entries are highlighted in yellow, but only three warrant reproduction here:

>10/26/2016     21:30   [General Grievance]
>
>>MY JAW SHOULD NOT HAVE GOTTEN BROKEN . . . . . . YOU NEED TO HAVE BETTER TRAINED OFFICERS . . . . . . .
>
>10/28/ 2016    04:13   [Response]
>
>>Our officers are trained extremely well. If you have a valid request, please ask.
>
>\* \* \*
>
>11/11/2016    11:51   [General Grievance]
>
>>I DO NOT FEEL SAFE IN THIS JAIL AND DONT THINK YOUR OFFICER WAS DOING HIS JOB . . . . . . . THE DAY MY JAW WAS BROKE . . . . . . . . . . I NEED TO STAY IN MEDICAL OR IN PC TO EVEN FEEL SAFE . . . . . .
>
>11/11/2016    13:53   [Response]
>
>>If you need PC status, talk to your pod officer and that can be arranged. If you are cleared from 2H for General Housing, that is where you will be housed.
>
>\* \* \*
>
>11/15/2016    20:55   [General Request]
>
>>I NEED TO KNOW WHO FROM THE CAPATAN TO THE C.O. ON THE DECK WHO WAS WORKING THE 19TH OF OCTOBER
>
>11/16/2016    02:58   [Response]
>
>>For what reason? Resubmit in full your reason[.]

Dkt. 35-1, pg. 23-29. Defendant also identified no fewer than sixteen entries that, he argued, show Plaintiff knew how to appeal or to escalate issues to the jail's superintendent. Those entries are highlighted in blue and concern Plaintiff's diet while his jaw was healing, an

5

unrelated disciplinary action, and his requests that Superintendent Redmond help him get his teeth fixed. Dkt. 35-2, pg. 5-37.

Plaintiff, for his part, testified that he did not submit a grievance about Vereecken's threats before the attack because he did not have access to a kiosk between the time Vereecken threatened him at breakfast on October 19, 2016, and the time of the attack later that same day. Instead, Plaintiff "nonchalantly and silently" told Officer Spates "about [the] problem." Plaintiff's encounter with Vereecken on October 19th, however, was not Plaintiff's first encounter with Vereecken; Plaintiff had "altercations" with Vereecken in the past in another division. He also had "issues" with Vereecken in the weeks leading up to the attack but "didn't think it was necessary" to tell a correctional officer about the issues before October 19th.

Plaintiff also initially testified that he did not submit a grievance after he was assaulted by Vereecken. He explained that "he didn't understand the grievance process" and that "the kiosk is really difficult if you're not computer savvy." Neither correctional officers nor inmates would help him, and he never received a copy of the inmate handbook. He did, however, see a video where they talked about the grievance process, but he did not "feel it necessary to get on the kiosk except for commissary . . . . I didn't know what grievance was and I didn't need that procedure, so I never looked into it[.]" He continued by stating the following: "I didn't even know what the grievance meant . . . . I mean, it says you can file a grievance, but I don't know, it's a big word."

In addition, Plaintiff testified that he was in the hospital for three days following the assault and then placed in segregation for approximately nine days. Although he was allowed out of his cell for an hour a day in segregation, he said that he did not come out of his cell to

shower or use the kiosk or phone.[1] He also testified that he did not submit a grievance "about Officer Spates not protecting [him] from Vereecken" because, "I guess I still didn't know the word grievance," he could not type fast enough to submit a grievance, the kiosks were down a lot, the kiosks get hacked a lot, and he did not know what "GT" stands for.

Plaintiff later changed his testimony, arguing that he exhausted administrative remedies. He explained as follows:

> I believe I did grie[ve] and I believe I did per se ask appeal. I asked plenty of other questions with an answer. I got answers for those questions. Then I asked another question with another question. So I put grievances on top of grievances on top of grievances, or appeal to get to that proper answer that I never was able to get. But I did not push the correct button. I started with the correct button, with the GT button . . . . But I did not put a general grievance or general requests. I did not push the correct button to go in ABC, 1, 2, 3, correct order because I don't understand the legal process or kiosk process, per se.

Plaintiff did not, however, identify a grievance explicitly stating that he told Defendant Spates about Vereecken's threat and that Spates failed to protect him from the ensuing assault. Thus, the Court must examine the grievances Plaintiff did submit.

## DISCUSSION

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust available administrative remedies before filing a federal lawsuit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Pavey*, 544 F.3d at 740; *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). To exhaust administrative remedies, an inmate must proceed through all steps of the institution's grievance process that are available to him. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). That means that the inmate must grieve his complaint through "'all steps that the agency holds out," and he must "do[] so properly (so that the agency addresses the issues on

---

[1] Contrary to Plaintiff's testimony, he made fifteen entries using the kiosk from October 19, 2016 to October 31, 2016. *See* Dkt. 35-1, pg. 23-29. The entries concerned requests for medication, requests for word search puzzles and books, his fear of being returned to general population, a request to have his teeth fixed, and his diet.

the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Moreover, because "the primary purpose of a grievance is to alert prison officials to a problem," *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (internal citations and quotation marks omitted), the inmate's grievance must include enough information to alert officials of the wrong for which the inmate seeks redress, *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). The Seventh Circuit requires strict compliance with the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate "who does not properly take each step within the administrative process has failed to exhaust" administrative remedies and thus "is foreclosed by § 1997e(a) from litigating." *Pozo*, 286 F.3d at 1024.

The PLRA does not, however, set forth the procedures an inmate must take to exhaust administrative remedies at a particular institution; rather, the procedures are established by each institution. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). The Winnebago County Sheriff's Office Corrections Bureau provides a three tier grievance system. *See* Dkt. 35, pg. 10. Inmates are encouraged first to "resolve problems in an informal manner." *Id.* If the inmate's problem is not adequately resolved, he may submit a grievance using the inmate kiosk. *Id.* Inmates are required to provide "a thorough explanation of the problem" in their grievance. *Id.* If the inmate's problem remains unresolved, he may appeal the grievance decision to the jail superintendent using the inmate kiosk. *Id.* The superintendent's (or his or her designee's) decision is final. *Id.*

Failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216. The burden, therefore, is on the defendant to prove by a preponderance of the evidence that an administrative remedy was available to the plaintiff and that the plaintiff failed to exhaust that

remedy. *Jones v. Dart*, No. 14 C 1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016) (Kendall, J.) (collecting cases).

The grievances identified by the parties contain no indication that Plaintiff was complaining about a correctional officer's failure to appropriately respond to a known, pre-assault threat—a threat purportedly known only to Defendant Spates because Plaintiff did not report the threat to anyone but Spates—rather than about how officers respond to violence between inmates that is already in progress. Specifically, Plaintiff's complained that his jaw should not have been broken, that the jail needs to have better trained officers, and that he does not feel safe are too vague to put officials on notice that a correctional officer purportedly knew Vereecken might assault Plaintiff. Instead, Plaintiff's grievances to jail officials are similar to his initial complaint in this case, which included no indication that his claim about the October 19, 2016 assault was based on an officer's alleged failure to prevent a potentially preventable assault. Because Plaintiff did not provided a thorough explanation of his problem, jail officials did not have an opportunity to address the issue Plaintiff now raises in this federal lawsuit.

That said, the Seventh Circuit found a grievance similar to Plaintiff's grievances sufficient to satisfy the PLRA's exhaustion requirement, absent a rule specifying the detail required of a grievance. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). After being raped by his cellmate, an Illinois prisoner submitted a grievance stating: "The administration don't do their job. A sexual assault should've never happen again." *Id.* (cleaned up). Illinois had "not adopted any rule governing the level of detail required of prisoners' grievances" at that time, so the Seventh Circuit found the level of detail required of grievances in Illinois akin to notice-pleading. The Court then found that the grievance was "at the border of intelligibility." *Id.* The Court instructed correctional facilities about their regulations: "If Illinois wants

9

grievances to be more detailed, it must adopt appropriate regulations and inform prisoners what is required of them." *Id.*

Unlike the grievance procedures in *Riccardo*, Winnebago County specifies that detainees must provide a "thorough explanation of the problem." Plaintiff's grievance concerning the October 19, 2016 assault nevertheless contained no more information than a grievance found (under a notice-pleading standard) to be at the border of intelligibility even though jail officials prompted Plaintiff to provide a better defined request. *See, e.g.,* Dkt. 35-1, pg. 23, Request #480119 ("If you have a valid request, please ask."); *id.*, pg. 29, Request #486071 ("Resubmit in full your reason[.]"). The only potentially relevant response to the officials' requests states: "BECAUSE OF MY BROKEN JAW I AM SCARED TO GO BACK TO G.E.N. POP . . . . . . AND THERE IS A RUMOR THAT I AM A NARK GOING AROUND." Dkt. 35-1, pg. 24, Request #480806 (cleaned up). But nothing in that response indicates that Plaintiff was complaining about an officer's purported failure to prevent the October 19, 2016 assault before it occurred. Plaintiff, therefore, failed to grieve an issue that corresponds to his claim in this lawsuit.

The Resident Request Report also shows that Plaintiff did not appeal any of his grievances about his safety or officer training to the jail's superintendent. Instead, Plaintiff testified that he did not know how to use the kiosk. But his prolific use of the kiosk—including his demonstrated ability to escalate his complaints to the jail's superintendent—shows otherwise. For example, Defendant identified no fewer than sixteen entries that show Plaintiff's attempts to communicate directly with Superintendent Redmond. Two of the requests concerned Plaintiff's diet after the October 19, 2016 assault, and eleven of the requests concerned dental care after his jaw healed. *See* Dkt. 35-2, pg. 5-37. None of the requests concerned Plaintiff's safety or officer

training. The fact that Plaintiff did not submit the requests as "appeals" is immaterial; when assessing Plaintiff's submissions, the Court considered whether Plaintiff presented sufficient notice of the issue he raises in this lawsuit to first-level grievance officials as well as to the jail's superintendent regardless of how Plaintiff categorized his submissions.

Plaintiff's reasons for not exhausting available administrative remedies focus on his purported inability to use the kiosks and to navigate the grievance process, but his conduct belies his testimony. Before the date of the assault at issue in this lawsuit, Plaintiff had submitted 42 requests and grievances using the kiosk. *See* Dkt. 35, pg. 16-23. His submissions included complaints about his back pain, sleeping mat, breakfast, constipation, placement in segregation, and a medical co-pay. By December 11, 2016, Plaintiff had started to submit requests directly to Superintendent Redmond when he did not receive the response he wanted from first-level responders. Consequently, Plaintiff's testimony that he did not know how to submit grievances or how to escalate his complaints is unpersuasive. *See, e.g., Tarik-El v. Knight*, No. 1:15-cv-363-WTL-DML, 2016 WL 6648187, at *4 (S.D. Ind. Nov. 10, 2016) (finding inmate's testimony that he did not know the proper procedure to exhaust not credible where inmate had previously availed himself of grievance process).

After considering all the evidence submitted by the parties, the Court finds that Defendant has proven by a preponderance of the evidence that administrative remedies were available to Plaintiff and that he did not exhaust them with respect to the claim in his complaint. Plaintiff had knowledge of the grievance process, but did not follow the grievance procedures established by the Winnebago County Sheriff's Office. Plaintiff presented no evidence or circumstances that would excuse his failure to exhaust. Therefore, it is this Court's report and recommendation that Plaintiff's claims be dismissed without prejudice for failure to exhaust. *See*

*Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("[A]ll dismissals under § 1997e(a) should be without prejudice.") Any objection to this Report and Recommendation must be filed by April 2, 2018. Failure to object may constitute a waiver of objection on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).


Dated: March 19, 2018  /s/Iain D. Johnston
U.S. Magistrate Judge